IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MERIAM SHAW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:16-cv-01163 |
| v. | § | |
| | § | |
| KROGER TEXAS LP, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Kroger Texas L.P. (referred to herein as "Kroger" or "Defendant") submits this Motion for Summary Judgment and moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking to dismiss all claims asserted by Plaintiff Meriam Shaw (referred to herein as "Plaintiff" or "Shaw").

# TABLE OF CONTENTS

**Page**

**Contents**

I. INTRODUCTION ........................................................................................................... 1

II. NATURE AND STAGE OF THE PROCEEDING .................................................. 2

III. RELEVANT FACTUAL BACKGROUND ............................................................. 2

    A.    Plaintiff's Hiring at Kroger ................................................................................2

    B.    Plaintiff's Doctor's Note Versus Her Job Requirements ........................................3

    C.    Plaintiff Walked Off the Job on March 25, 2014...................................................4

    D.    Plaintiff Refused to Obtain Clarification of Her Lifting Restrictions.....................4

IV. ARGUMENTS AND AUTHORITIES ................................................................... 6

    A.    Summary Judgment Standard .............................................................................6

    B.    Summary Judgment is Appropriate on Plaintiff's Pregnancy Discrimination
        Claim.................................................................................................................6

        1.    Applicable Law Regarding Gender and Pregnancy Discrimination............ 6

        2.    Plaintiff Cannot Show She was Qualified for the Sacker Position. ............ 7

        3.    There is No Evidence of Disparate Treatment........................................... 9

        4.    Plaintiff Cannot Show that the Proffered Reasons for Kroger's Inability to
            Accommodate Her Lifting Restrictions Were Pretextual. ....................... 10

    C.    Summary Judgment is Appropriate on Plaintiff's Disability Discrimination Claim.11

        1.    Plaintiff Cannot Prove She Was "Disabled.".......................................... 11

        2.    Kroger Had No Duty to Accommodate Plaintiff Because No Reasonable
            Accommodation Existed......................................................................... 13

V. CONCLUSION ................................................................................................. 14

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ..........................................6

*Bratten v. SSI Servs., Inc.*,
  185 F.3d 625 (6th Cir. 1999) ....................................................................................14

*Bryan v. McKinsey & Co.*,
  375 F.3d 358 (5th Cir. 2004) .....................................................................................9

*Burch v. City of Nacogdoches*,
  174 F.3d 615 (5th Cir. 1999) ....................................................................................14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................................6

*Cochrum v. Old Ben Coal Co.*,
  102 F.3d 908 (7th Cir. 1996) ....................................................................................14

*Cole v. Venture Transport, Inc.*,
  No. CIV.A. 99–3259, 2000 WL 335743 (E.D. La. March 30, 2000) ........................8

*Cooper Tire & Rubber Co. v. Farese*,
  423 F.3d 446 (5th Cir. 2005) .....................................................................................6

*Delcourt v. BL Development Corp.*,
  No. 2:97–CV–199–B–B,1998 WL 911785 (N.D. Miss. 1998) .................................8

*Elliott v. Horizon Healthcare Corp.*,
  180 F.3d 264 (5th Cir. 2004) .....................................................................................8

*Feist v. La. Dep't of Justice, Office of the Att'y Gen.*,
  740 F.3d 450 (5th Cir. Sept. 16, 2013) ...................................................................11

*Haggar Apparel Co. v. Leal*,
  154 S.W.3d 98, 48 Tex. Sup. Ct. J. 273 (Tex. 2004) ..............................................12

*Hershey v. Praxair, Inc.*,
  969 F. Supp. 429 (S.D. Tex. 1997) ..........................................................................14

*Newman v. Chevron U.S.A.*,
  979 F. Supp. 1085 (S.D. Tex. 1997) ........................................................................14

*Janssen Pharms., Inc. v. Martinez,*
    296 S.W. 3d 634 (Tex. App.—El Paso 2009, no pet.)..............................................7

*Kiser v. Original, Inc.,*
    32 S.W.3d 449 (Tex. App.-Houston [14th Dist.] 2000, no pet.)................................13

*Little v. Texas Dep't of Criminal Justice,*
    148 S.W.3d 374, 48 Tex. Sup. Ct. J. 56 (Tex. 2004)..............................................12

*McCoy v. Tex. Instruments, Inc.,*
    183 S.W.3d 548 (Tex. App.—Dallas 2006, no pet.)................................................10

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)..............................................6

*Michael v. City of Dallas,*
    314 S.W.3d 687 (ex. App.—Dallas 2010, no pet.) ..................................................6

*Moritz v. Frontier Airlines, Inc.,*
    147 F.3d 784 (8th Cir. 1998) ..............................................................................14

*Neely v. PSEG Tex., Ltd. P'ship,*
    735 F.3d 242 (5th Cir. 2013) ..............................................................................12

*Nichols v. Loral Vought Sys. Corp.,*
    81 F.3d 38 (5th Cir. 1996) ................................................................................10

*Ray v. Glidden Co.,*
    85 F.3d 227 (5th Cir. 1996) ..............................................................................13

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)..........................................7

*Richards v. Seariver Maritime Financial Holdings, Inc.,*
    59 F. Supp. 2d 616 (S.D. Tex. 1998) ................................................................13

*Ross v. GTE Wireless of Houston Inc.,*
    No. H–98–4046, 2000 WL 1279618, at *9 (S.D.Tex. Jan.14, 2000) ....................13

*Salazar v. Recreational Sports & Imports Dallas, Inc.,*
    No. 4:04-CV-811-A, 2005 WL 2026173 (S.D. Tex. Aug. 22, 2005)........................8

*Sandstad v. CB Richard Ellis, Inc.,*
    309 F.3d 893 (5th Cir. 2002) ..............................................................................7

*Simmons v. McGuffey Nursing Home,*
    619 F.2d 369 (5th Cir. 1980) ..............................................................................10

*Thomann v. Lakes Reg'l MHMR Ctr.*,
    162 S.W.3d 788 (Tex. App.—Dallas 2005, no pet.)............................................12, 13

*Tyler v. La–Z–Boy Corp.*,
    506 Fed.Appx. 265 (5th Cir. 2013) ..................................................................12

*Tyler v. La-Z-Boy Corp.*,
    506 F. App'x 265 (5th Cir. 2013) ....................................................................12

*Urbano v. Continental Airlines, Inc.*,
    138 F.3d 204 (5th Cir. 1998), *cert. denied,* 525 U.S. 1000, 119 S. Ct. 509, 142
    L. Ed. 2d 422 (1998) ......................................................................................9

*Villarreal v. J.E. Merit Constructors, Inc.*,
    895 F. Supp. 149 (S.D. Tex. 1995) ..................................................................12

*West v. Nabors Drilling USA, Inc.*,
    330 F.3d 379 (5th Cir. 2003) ..........................................................................7

*Wilkerson v. Boomerang Tube, LLC*,
    No. 1:12–CV–1982014 WL 5282242 (E.D. Tex. Oct. 15, 2014)........................12

Winters v. Chubb & Son, Inc.,
    132 S.W.3d 568 (Tex. App.—Houston [14th Dist.] 2004, no pet.).......................10

*Young v. United Parcel Serv., Inc.*,
    135 S. Ct. 1338, 1350, 191 L. Ed. 2d 279 (2015) ............................................9, 10

**Statutes**

42 U.S.C. Section 12101 et seq...............................................................................12

ADA..................................................................................................12, 13, 14

Americans with Disabilities Act of 1990 Title I ..........................................................12

Human Rights Act.................................................................................................2

TEX. LAB. CODE ANN. § 21.001(3) (Vernon 1996)..................................................12

Texas Labor Code Chapter 21 .......................................................................6, 7, 12, 15

**Other Authorities**

29 C.F.R. § 1630, App. at 396 (1994)........................................................................12

Rule 56(a)...........................................................................................................6

# I.
## INTRODUCTION

A grocery sacker who cannot lift groceries or push carts is like a carpenter who cannot lift a hammer. Plaintiff was hired by Kroger as a courtesy clerk (a/k/a "sacker" or "bagger") on March 10, 2014. Four days after she was hired, Plaintiff discovered she was pregnant and, on March 25, 2014, she provided Kroger with lifting restrictions prohibiting her from pushing "stacked carts" or lifting items that weighed more than 15 pounds. Lifting more than 15 pounds is an essential part of a sacker's job and Plaintiff was unable to provide any details on the length of time she would be unable to perform this integral duty.

Plaintiff's Store Manager, Curt Groscurth, informed Plaintiff that Kroger could not accommodate her restrictions as the Company best understood them, but left open the possibility of continued employment if Plaintiff obtained clarification from her doctor as to the duration and extent of her restrictions. Plaintiff never provided the requested information and never returned to work after March 25, 2014.

Plaintiff's pregnancy/gender claim fails because there is no evidence that Plaintiff was treated less favorably than employees outside her protected classes.   Specifically, there is no evidence that Kroger accommodated similar requests for accommodation by male or non-pregnant employees.  Plaintiff's disability discrimination claim also fails because pregnancy is not a covered condition and there is no evidence in this case that Plaintiff actually had any underlying medical complications which could rise to the level of a disability, or that Kroger regarded Plaintiff as having a disability.  Lastly, Plaintiff's claim for denial of a reasonable accommodation fails because Plaintiff was unable to perform the essential functions of her job and no reasonable accommodation was available.   For all of these reasons, summary judgment is appropriate.

## II.
## NATURE AND STAGE OF THE PROCEEDING

Plaintiff filed her Petition in a Harris County District Court on March 16, 2016. Thereafter, Kroger removed this case to federal court. Plaintiff's Petition asserts claims for pregnancy and disability discrimination under the Texas Commission of Human Rights Act. The parties have completed discovery. The dispositive motion deadline is May 8, 2017, and Trial in this case is scheduled for July 24, 2017.

## III.
## RELEVANT FACTUAL BACKGROUND

**A.**   **Plaintiff's Hiring at Kroger**

Plaintiff's tenure at Kroger was brief. She was hired on March 10, 2014 as a part time courtesy clerk and assigned to Store No. 265. (Exhibit 1 – Associate Profile).  For all times relevant to this suit, Plaintiff was within her 90 day probationary period. (Exhibit 2 – Deposition Transcript of Curt Groscurth p. 29:14-23).

Plaintiff applied for several positions at Kroger, including Dairy Clerk, Courtesy Clerk (i.e. bagger), Produce Clerk, and Overnight Grocery Clerk. (Exhibit 3 – Application of Meriam Shaw).  During the hiring/pre-boarding process, the essential job duties, responsibilities, and physical requirements of each of these positions were explained to Plaintiff in detail by District Recruiting Manager Tiffany Sanford. (Exhibit 4 – Deposition Transcript of Meriam Shaw, p. 37:12:22). Plaintiff did not want to work any overnight shifts or in a cold environment, so she chose the bagger position.  (*Id*. at 36:10-23). Plaintiff was specifically told that as a sacker she would have to push baskets and pick up bags of groceries. (*Id*. at p. 37:12:22). Plaintiff confirmed that she could perform all of the essential functions of the sacker position, and she was hired for that position. (*Id*. at p. 37:12:24).

B.    <u>Plaintiff's Doctor's Note Versus Her Job Requirements</u>

The grocery sacker position is a physically demanding job. (Exhibit 5 – Physical Demand Analysis, Bagger Position). In addition to bagging groceries, sackers must also lift full bags of groceries into shopping carts, carrying bags of groceries for customers and load heavy items into customer vehicles. (*Id.*). Cases/bags of groceries, a bag of charcoal, one case of water, a large bag of dog food or a large bag of cat litter each weigh more than 15 pounds (*See id.*; Ex. 4, p. 87:24-88:4).   Baggers are required to lift up to 25 pounds on a continuous basis. (Ex. 5). According to Kroger's job analysis, baggers are required to lift 26-50 pounds <u>daily</u>. (*Id.*)

On or about March 14, 2014, Plaintiff began to experience pain at work due to her pregnancy. (Ex. 4, p. 61:15-24). Plaintiff told coworkers she was pregnant and she posted to Facebook: "I don't know if I should be celebrating. I got a job, but found out I'm pregnant again. My stomach is hurting from seven-and-a-half hour shift today. Just hoping for a healthy pregnancy, and hopefully my babies will accept their little sister or brother." (*Id.*). Kroger became aware that Plaintiff was pregnant and that she was experiencing stomach pain; therefore, Plaintiff was asked to provide a note from her health care provider outlining her medical restrictions, if any. (Ex. 4, p. 50:17-51:7). Plaintiff concedes that this request was not threatening (in fact Groscurth congratulated her from being pregnant), and Kroger did not even provide a deadline. (Ex. 4 p. 51:1 - 52:12).

Plaintiff went to her doctor on March 24, 2014 and was given a note to take to Kroger (Ex. 4 p. 52:18-19).   Plaintiff's doctor's note describes her limitations as follows: "cannot lift anything greater than 15 pounds – cannot pushed stacked shopping carts." (Exhibit 6 – Doctor's Note).   Plaintiff saw her doctor when she was approximately seven weeks pregnant. (Ex. 4, p. 53:25-54:7).   The note does not have a time period as to when the restrictions would be needed. (Ex. 6).   Plaintiff concedes that she never provided a job description to her doctor, but just

3

generally described her duties.   (Ex. 4 p. 57:3-15).  Plaintiff testified that she did not have any discussion with her doctor about the restrictions or the fact that her job required her to lift more than 15 pounds.  (Ex. 4 p. 58:8-59:1).

## C.      Plaintiff Walked Off the Job on March 25, 2014

On March 25, 2014, the next day following her doctor visit, Plaintiff testified that she approached supervisor Emilia Rodriguez and told her about the restrictions she had received from her doctor the previous day. (Ex. 4 p. 66:1-6). Rodriguez temporarily accommodated Plaintiff's restrictions by allowing her to push carts (a few at a time) instead of bagging groceries. (Ex. 4, p. 67:2-9). Plaintiff was also asked not to lift anything that weighed more than 15 pounds. (Ex. 2, p. 43:9-14). Shortly after she began lot duty, it began to rain.  (Ex. 4, p. 67:7-25).  Plaintiff was angry that she was asked to collect baskets in the rain and felt that Rodriguez was being insensitive. (*Id*.)("She's being, I would say, insensitive").  After only working part of her shift, Plaintiff clocked out and left. (See Exhibit 7 – EEOC Charge)("I went and brought carts back to the store but then I rested because I felt some pain.  I clocked out, and then I went upstairs to talk to the head manager, Mr. G.").  Plaintiff claimed in her deposition she was told by Rodriguez to leave because she could not perform her job, which she acknowledges is a different story from her EEOC Charge. (Ex. 4 p. 70:1-8).[1]

## D.      Plaintiff Refused to Obtain Clarification of Her Lifting Restrictions.

Later in the day on March 25, 2014, after she clocked out, Plaintiff had a meeting with Store Manager Groscurth.   Plaintiff first went to her car to obtain a cell phone, then returned to the store, and hid her cell phone beneath her shirt so that she could secretly record her conversation with Groscurth. (Ex. 4 p. 74:18-20).  Groscurth testified that it was communicated

---

[1] Kroger's position is that it does not matter, for summary judgment purposes, whether Plaintiff walked off the job or was asked to clock out, because it is undisputed that Plaintiff was told later that same day she was not terminated (Ex. 4, 85:4-12) and Kroger would consider any additional paperwork from her doctor in deciding if her restrictions could be accommodated. (Ex. 4, p. 89:15:23).

to him earlier by a supervisor that Plaintiff had walked off the job. (Ex. 2, p. 28:17-19). Groscurth advised Plaintiff that she had walked off the job, and she had not been terminated. (Ex. 4 p. 84:22-85:12). During the conversation, Plaintiff never refuted this version of events. (Ex. 4, p. 92:2-10).

In the meeting, Groscurth and Plaintiff discussed her lifting restrictions.   Plaintiff claims she was told by Groscurth that "nobody works in my store that can't lift 15 pounds." (Ex. 4 p. 87:16-19).   Therefore, Groscurth suggested that Plaintiff return to her doctor and explain her position in greater detail to determine whether any changes to her restrictions could be made. (Ex. 4, p. 89:15:23). Once she obtained clarification about her restrictions, Groscurth instructed Plaintiff to contact him to further discuss her restrictions and the possibility of an accommodation. (*Id.*).  Importantly, Groscurth never told Plaintiff her employment at Kroger had been terminated. (Ex. 4, 85:4-12) In fact, Groscurth told Plaintiff multiple times that if her restrictions changed after she explained the job to her doctor, Groscurth would see if an accommodation was feasible. (Ex. 4, p. 89:15:23) Groscurth also told Plaintiff to follow up with him once she had spoken with her doctor (*Id.*).

After her meeting with Groscurth, Plaintiff never contacted her doctor to discuss her restrictions. (Ex. 4, 90:5-8). Plaintiff also never followed up with Groscurth regarding her restrictions. (Ex. 4, 105:19:23). Instead, Plaintiff contacted an attorney the same day she met with Groscurth, and she met with the attorney the following day on March 26, 2014. (Ex. 4, p. 95:1-11). She filed a Charge of Discrimination with the EEOC that same day. (Ex. 4, p. 95:9-14; Ex. 7).

# IV.
## ARGUMENTS AND AUTHORITIES

**A.**     <u>**Summary Judgment Standard**</u>

Rule 56(a) requires the issuance of summary judgment "if the Movant shows that there is no genuine issue as to any material fact and that the Movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party bears the initial burden of informing the court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. *Id.* at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248.

**B.**     <u>**Summary Judgment is Appropriate on Plaintiff's Pregnancy Discrimination Claim.**</u>

**1.**     **Applicable Law Regarding Gender and Pregnancy Discrimination.**

Chapter 21 of the Texas Labor Code makes it unlawful to discharge an employee because of her sex, which includes discrimination based on pregnancy. In the absence of direct evidence, discrimination claims under Chapter 21—including pregnancy and disability discrimination claims—are analyzed using the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Michael v. City of Dallas*, 314 S.W.3d 687, 690-91 (ex. App.—Dallas 2010, *no pet.*) (applying McDonnell-Douglas analysis to disability discrimination claim under Chapter 21); *Janssen Pharms., Inc. v. Martinez*,

296 S.W. 3d 634, 641 (Tex. App.—El Paso 2009, no pet.) (applying McDonnell-Douglas analysis to pregnancy discrimination claim under Chapter 21).

Under this analysis, the plaintiff bears the initial burden of presenting evidence to establish a *prima facie* case of discrimination. To establish a *prima facie* case of discrimination under Chapter 21, an employee must show: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably. *Janssen Pharms., Inc.*, 296 S.W. 3d at 641.

If the plaintiff establishes a *prima facie* case, the employer has an opportunity to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). At this stage, the employer's burden is one of production only, not of persuasion. *Id*. at 142). Once the employer offers evidence of such a legitimate reason, the burden returns to the plaintiff to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id*. at 143. If the plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only a tenuous inference of pretext, summary judgment in favor of the defendant is appropriate. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 894 (5th Cir. 2002).

### 2. Plaintiff Cannot Show She was Qualified for the Sacker Position.

As a threshold matter, Plaintiff cannot establish a prima facie case because she cannot show she was qualified for the position of sacker. Although an employer may not discriminate against an employee *because* she is pregnant, being unable to perform a job due to pregnancy-

related restrictions precludes a pregnancy discrimination claim. *See Elliott v. Horizon Healthcare Corp.*, 180 F.3d 264 (5th Cir. 2004) (affirming summary judgment where plaintiff could not establish that she was qualified for the position she lost because of doctor's lifting restrictions due to pregnancy); *Delcourt v. BL Development Corp.*, 1998 WL 911785 (N.D. Miss. 1998) (plaintiff alleging pregnancy discrimination could not show that she was qualified for her position for the purposes of establishing a *prima facie* case where she could not perform her job duties due to doctor's restrictions); *Salazar v. Recreational Sports & Imports Dallas, Inc.*, No. 4:04-CV-811-A, 2005 WL 2026173 (S.D. Tex. Aug. 22, 2005) (granting summary judgment for employer on pregnancy discrimination claim where plaintiff had doctor's physical restrictions and plaintiff herself admitted she could not perform all of her duties); *Cole v. Venture Transport, Inc.*, No. CIV.A. 99–3259, 2000 WL 335743 (E.D. La. March 30, 2000) (granting summary judgment for employer on pregnancy  discrimination claim where pregnant employee obtained a doctor's opinion that during pregnancy she could not exert force in excess of 100 lbs, a job-related business requirement, and was no longer qualified to be a truck driver).

In this case, Plaintiff's main job function as a sacker was to bag groceries. (Ex. 5; Ex. 4, p. 37:12:22). This included putting bags of groceries and other grocery items into shopping carts and loading large items and heavy bags of groceries into customer vehicles. (*Id.*). By the very nature of the position, baggers are required to continuously lift, bag, and load a variety of grocery items, including, for example, cases of water, bags of dog food, bags of groceries (e.g. canned goods) and other items weighing more than 15 pounds. (Ex. 5). Thus, being able to lift items that weigh 15 pounds or more was an essential and indispensable function of Plaintiff's position. (Ex. 2 p. 42:2-5).  Plaintiff's medical restrictions prevented her from performing this function, as a matter of law.

### 3.      There is No Evidence of Disparate Treatment.

Plaintiff has not presented any evidence of disparate treatment, and she cannot show that a similarly situated male or non-pregnant employee was treated differently. *See, e.g., Bryan v. McKinsey & Co.*, 375 F.3d 358 (5th Cir. 2004) (affirming summary judgment in favor of the employer where the plaintiff failed to demonstrate that other similarly-situated employees were treated more favorably). Although an employer is obligated to ignore a woman's pregnancy and to treat the employee as well as it would have if she were not pregnant, the law does not impose an affirmative obligation on employers to grant preferential treatment to pregnant women. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204 (5th Cir. 1998), *cert. denied,* 525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998).  Importantly, the Supreme Court's ruling in *Young v. UPS*, did not disturb this well-settled precept of law. 135 S. Ct. 1338, 1350, 191 L. Ed. 2d 279 (2015). In fact, the *Young* court was careful to point out that:

> We agree with UPS to this extent: We doubt that Congress intended to grant pregnant workers an unconditional most-favored-nation status. The language of the statute does not require that unqualified reading. The second clause, when referring to nonpregnant persons with similar disabilities, uses the open-ended term "other persons." It does not say that the employer must treat pregnant employees the "same" as "any other persons" (who are similar in their ability or inability to work), nor does it otherwise specify which other persons Congress had in mind. Moreover, disparate-treatment law normally permits an employer to implement policies that are not intended to harm members of a protected class, even if their implementation sometimes harms those members, as long as the employer has a legitimate, nondiscriminatory, nonpretextual reason for doing so.

*Young v. United Parcel Serv., Inc.*, 135 S. Ct. at 1350.

In this case, Plaintiff cannot point to any male or non-pregnant female grocery sacker who had a 15-pound lifting restriction, and was accommodated by Kroger. Beyond this undisputed fact, Plaintiff cannot point to any policy whereby Kroger accommodated some classes of employees with 15-pound lifting restrictions but did not accommodate others. Furthermore, because Kroger does not maintain an accommodation policy that distinguishes

9

between medical conditions resulting from on-the-job injuries and those that do not, the holding in *Young* does not preclude summary judgment in this case.

By her own testimony, Plaintiff claims she was told by Groscurth that "nobody" works in his store with a 15 pound lifting restriction because of the nature of the grocery business. (Ex. 4 p. 87:16-19). There is no evidence that Kroger accommodated a 15-pound lifting restriction (Ex. 6) for anyone.  Therefore, Plaintiff's discrimination claim must fail.

### 4. Plaintiff Cannot Show that the Proffered Reasons for Kroger's Inability to Accommodate Her Lifting Restrictions Were Pretextual.

Assuming, *arguendo*, Plaintiff could establish a *prima facie* case of discrimination, her claim would nevertheless fail because she cannot show Kroger's proffered reasons for not being able to accommodate her 15-pound lifting restriction are a pretext for discrimination. It is well settled that "[a]n employee's subjective belief of discrimination or retaliation, no matter how genuine, cannot serve as the basis for judicial relief." *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548 * (*citing Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996); *see also* Winters v. Chubb & Son, Inc., 132 S.W.3d 568, 576 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Simmons v. McGuffey Nursing Home*, 619 F.2d 369, 371 (5th Cir. 1980) ("We are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief.").  Therefore, at this stage in the burden-shifting analysis, Plaintiff must point to specific evidence that shows discrimination.

In this case, Plaintiff has not presented any evidence that shows pretext. Specifically, Plaintiff cannot show that anyone at Kroger made discriminatory remarks towards her or otherwise displayed any kind of animus because of her pregnancy.  In fact, Plaintiff was

repeatedly told by Groscurth that her pregnancy was not an issue and that he would try to accommodate her if Plaintiff's restrictions could be modified.[2]

For example, even though Plaintiff walked off the job, and effectively quit, Groscurth was willing to revisit the possibility of Plaintiff working at Kroger if she provided additional information about her medical restrictions. (Ex. 4, p. 89:15:23). Specifically, Groscurth explained that Kroger could not feasibly accommodate a 15-pound lifting restriction; however, he expressly stated that if Plaintiff's doctor modified her restrictions, he would attempt to find a way to accommodate. (*Id.*). It was Plaintiff's responsibility to contact her physician and follow up with Kroger about her restrictions, but she never took this step. (Ex. 4, pp. 90:5-8; 94:4-11). Accordingly, Kroger had legitimate, non-pretextual reasons for failing to accommodate her restrictions and not putting Plaintiff back to work following the events on March 25, 2014.

## C.   <u>Summary Judgment is Appropriate on Plaintiff's Disability Discrimination Claim.</u>

To prevail on a claim of discrimination based on a failure to accommodate, Plaintiff must show: (1) she was a qualified individual with a disability; (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. *Feist v. La. Dep't of Justice, Office of the Att'y Gen.,* 740 F.3d 450, 452 (5th Cir. Sept. 16, 2013) (emphasis added).[3]

### 1.   **Plaintiff Cannot Prove She Was "Disabled."**

The "threshold requirement" in any disability discrimination case is a showing that the plaintiff suffered from a disability protected under the ADA (or Chapter 21 under Texas law).

---

[2] Groscurth also testified that he has accommodated pregnant employees in the past. (Ex. 2 p. 34:3-14).

[3] One purpose of Chapter 21 of the Texas Labor Code is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments (42 U.S.C. Section 12101 et seq.)." TEX. LAB. CODE ANN. § 21.001(3) (Vernon 1996). In 1993, the legislature incorporated the ADA definition of the term "disability" into Chapter 21. *Little v. Texas Dep't of Criminal Justice*, 148 S.W.3d 374, 381-82, 48 Tex. Sup. Ct. J. 56 (Tex. 2004). Accordingly, courts are guided by federal law in construing claims brought under chapter 21. *Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 795-796, 2005 (Tex. App.—Dallas 2005, no pet.) (*citing Haggar Apparel Co. v. Leal*, 154 S.W.3d 98, 100, 48 Tex. Sup. Ct. J. 273 (Tex. 2004).

*Wilkerson v. Boomerang Tube, LLC*, No. 1:12-CV-198, 2014 WL 5282242, at *5 (E.D. Tex. Oct. 15, 2014) (*citing Tyler v. La–Z–Boy Corp.*, 506 Fed. Appx. 265, 267 (5th Cir. 2013). Thus, even under the ADA, as amended by the ADAAA, to prevail on a claim of discrimination based on a failure to accommodate, Plaintiff must still prove she had a disability. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013). "In other words, though the ADAAA makes it *easier* to prove a disability, it does not *absolve* a party from proving one." *Id.* at 245. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Tyler v. La-Z-Boy Corp.*, 506 F. App'x 265, 267 (5th Cir. 2013).

Plaintiff has not set forth sufficient evidence to show that she had a physical impairment, which substantially limited her ability to perform one or major life activities. Under the ADA, pregnancy, by itself, is not a physical impairment. *See* 29 C.F.R. § 1630, App. at 396 (1994)("Other conditions, like pregnancy, that are not the result of a physiological disorder are also not impairments."). Courts have consistently agreed that pregnancy is not considered a disability under the ADA. See *Villarreal v. J.E. Merit Constructors, Inc*., 895 F. Supp. 149, 152 (S.D. Tex. 1995)("This Court concludes that pregnancy and related medical conditions do not, absent unusual circumstances, constitute a "physical impairment" under the ADA."); *see also Ross v. GTE Wireless of Houston Inc*., No. H–98–4046, 2000 WL 1279618, at *9 (S.D.Tex. Jan.14, 2000) *8 (granting summary judgment on ADA claim because pregnancy is not a disability under the ADA).[4]

Plaintiff also cannot show that Kroger "regarded" her as disabled. Even if Kroger "regarded" Plaintiff as having a temporary impairment related to pregnancy, this claim fails for

---

[4] Similarly, courts have repeatedly held that a lifting restriction, by itself, does not rise to the level of a protected disability. *See, e.g., Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996); *Richards v. Seariver Maritime Financial Holdings, Inc.*, 59 F. Supp. 2d 616, 627-28 (S.D. Tex. 1998).

the same reasons that a temporary impairment for pregnancy is not an actual disability.  For Plaintiff to prove that Kroger "regarded" her as disabled, she must show: (1) Kroger believed she had a physical impairment that substantially limits a major life activity when in fact she does not, or (2) Kroger believed she has a substantially limiting impairment which in fact was not so limiting. *Kiser v. Original, Inc.*, 32 S.W.3d 449, 453 (Tex. App.-Houston [14th Dist.] 2000, *no pet.*). Plaintiff cannot show either of these things, and the fact that Kroger determined Plaintiff's lifting restriction prevented her from performing the essential functions of a sacker does not support the conclusion that Kroger regarded Plaintiff as having an impairment that substantially limited a major life activity. This "merely supports the conclusion that [Plaintiff] was unable to perform her job as a sacker because of the lifting restriction." *Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 799 (Tex. App.—Dallas 2005).

### 2. Kroger Had No Duty to Accommodate Plaintiff Because No Reasonable Accommodation Existed.

Given Plaintiff's 15-pound lifting restriction, there was only one possible accommodation that would have allowed her to continue working as a sacker—i.e. have another employee help Plaintiff with lifting, carrying and loading groceries, etc. which would have essentially required Kroger to staff another person solely to assist Plaintiff. Courts have held that employers are not required to assign existing employees or hire new employees to perform essential functions of a disabled employee's job which the employee cannot perform by virtue of his or her disability. *See Hershey v. Praxair, Inc.*, 969 F. Supp. 429, 435 (S.D. Tex. 1997). Indeed, "[i]t is not reasonable to require an employer to have two people doing one person's job in the name of accommodation. Assistance is one thing, but performing a significant portion of the essential functions of another person's job is another thing altogether." (*Id.*). *Newman v. Chevron U.S.A.*, 979 F. Supp. 1085 (S.D. Tex. 1997); *see also Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632-33

13

(6th Cir. 1999) (affirming district court's ruling that having another worker assist plaintiff was not reasonable a reasonable accommodation); *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir. 1998) (recognizing that the employer is not obligated under ADA to hire additional employees or reassign existing workers to assist plaintiff with her job duties); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 913 (7th Cir. 1996) ("Having a helper do most if not all of the duties the position entails" is an "extraordinary" accommodation, not a reasonable one.). Furthermore, in accommodating an employee with a disability, an employer is not obligated "to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employee . . . to do so." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999).

As explained in greater detail herein, lifting items that weighed more than 15 pounds is an essential function of the sacker position. (Ex. 5; Ex. 2 p. 42:2-5).  Kroger was not obligated to modify Plaintiff's job position in such a way that she no longer had to perform essential functions. Kroger was also not required to provide Plaintiff with a "helper" so that she would not have to lift items weighing more than 15 pounds.

Ultimately, Plaintiff has failed to show she could perform the essential functions of her position with or without a reasonable accommodation; and thus, she has failed to establish a *prima facie* case of failure-to-accommodate under Chapter 21. The Court should, therefore, grant summary judgment.

## V.
## CONCLUSION

For the reasons stated herein, Defendant respectfully requests the Court grant Defendant's Motion for Summary Judgment and any other relief to which the Court finds Kroger may be justly entitled.

Respectfully submitted,


By:  /s/ *David L. Barron*
    David L. Barron
    Texas Bar No. 00798051
    Southern District Bar No. 21117
    Leila C. Clewis
    Texas Bar No. 24077579
    Southern District Bar No. 1872165
    COZEN O'CONNOR, P.C.
    LyondellBasell Tower
    1221 McKinney, Suite 2900
    Houston, Texas 77010
    Telephone: (713) 750-3132
    Facsimile:  (832) 214-3905
    dbarron@cozen.com
    lclewis@cozen.com

    ATTORNEYS FOR DEFENDANT
    KROGER TEXAS L.P.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of May 2017, a true and correct copy of the foregoing

***Defendant's Motion for Summary Judgment*** was duly served upon all counsel of record and

parties entitled to notice via ECF to the following:

Peter Costea
Three Riverway, Suite 1800
Houston, Texas 77056
Facsimile: 713-659-5302
Email:  peter@costealaw.com

ATTORNEY FOR PLAINTIFF
MERIAM SHAW


 /s/ *David L. Barron*_____
David L. Barron


30049480\3

16